CLARE E. CONNORS #7936
United States Attorney
District of Hawaii

MARSHALL H. SILVERBERG #5111
Assistant U.S. Attorney
Room 6-100, PJKK Federal Building
300 Ala Moana Boulevard
Honolulu, Hawaii 96580
Telephone: (808) 541-2850
Facsimile:  (808) 541-2958
E-mail:  Marshall.silverberg@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

### IN THE UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR. NO. 19-00046 LEK |
| | ) | |
| Plaintiff, | ) | The Government's Second Amended |
| | ) | Notice of Its Intent to Adduce |
| vs. | ) | Evidence of Uncharged Criminal |
| | ) | Criminal Conduct; Exhibits 1-4; |
| CHARLES KIMO BROWN, | ) | Certificate of Service |
| | ) | |
| Defendant. | ) | Bench Trial Date: April 5, 2022 |
| | ) | Time: 9:00 a.m. |
| _____ | ) | Judge: Hon. Leslie E. Kobayashi |

**THE GOVERNMENT'S SECOND AMENDED
NOTICE OF ITS INTENT TO ADDUCE
EVIDENCE OF UNCHARGED CRIMINAL CONDUCT**

## I.   __Introduction__

In accordance with the Report of the Final Pretrial Conference (Dkt. 53, Category No. 1, PageID# 114), the Government hereby provide notice of its intent to adduce evidence of uncharged criminal conduct.  The only reason that this criminal conduct was not charged in the Indictment was because it was committed outside the statute of limitations.  The evidence of that criminal conduct is of the same nature as the charged offenses and is "inextricably intertwined" with the four charged offenses.  Accordingly, the evidence does not fall within the scope of Federal Rule of Evidence 404(b) and, consequently, the notice provided herein is not required by that evidentiary rule or by the Report of the Final Pretrial Conference.  Nonetheless, in an abundance of caution, the Government hereby provides notice of its intent to adduce evidence of uncharged criminal conduct.[1]

## II.   __The Indictment__

Counts 1 and 3 of the Indictment charge the defendant Charles Kimo Brown ("Brown") with making false entries in records required to be kept by his employer union, the Longshore Division of ILWU Local 142, in violation of 29 U.S.C. § 439(c).  Counts 2 and 4 charge Brown with embezzling union funds relating to those two false entries, in violation of 29 U.S.C. § 501(c).

---

[1] The Government originally provided such written notice on January 9, 2020 (Dkt. 22).  The Government filed an amended notice on January 24, 2020 (Dkt. 24).  The instant notice supersedes the earlier two notices.

The crimes charged in the Indictment were allegedly part of a much longer scheme, beginning in January 2010 and continuing thereafter until April 21, 2014, whereby Brown allegedly stole about $100,000 from the union.  The Government did not seek additional counts relating to the earlier thefts and false entries because they were time-barred by the five-year statute of limitations on the day the case was presented to the grand jury (April 11, 2019).  The Government intends to proceed to trial on all four Counts of the Indictment.[2]

## III.   **Argument**

"Evidence of 'other acts' is not subject to Rule 404(b) analysis if it is 'inextricably intertwined' with the charged offense."  *United States v. Wells*, 879 F.3d 900, 928 (9th Cir. 2018) (quoting *United States v. Beckman*, 298 F.3d 788, 793-94 (9th Cir. 2002)).  "This exception applies when (1) 'particular acts of the defendant are part of . . . a single criminal transaction,' or when (2) 'other act' evidence . . . is necessary [to admit] in order to permit the prosecutor to offer a coherent and comprehensible story regarding the commission of the crime.'"  *Id.*

---

2 The Government recognizes that it has indicated in the past that it intended at some point to move to dismiss Counts 1 and 2.  Those statements were made in error and the Government sincerely apologizes for any confusion caused by them. After spending most of the past two weeks preparing this case for trial, the Government's counsel, who was not involved in the investigation or presentation of the case to the grand jury, now realizes that Counts 1 and 2 were properly charged and should not be dismissed prior to trial.  Again, the Government apologizes for any confusion caused by the earlier misstatements.

"Thus, in *United States v. Williams*, 989 F.2d 1061, 1070 (9th Cir. 1993), the Ninth Circuit 'concluded contemporaneous sales of cocaine and crank by the defendant were inextricably intertwined with the crime with which the defendant was charged: the sale of cocaine." *United States v. Vizcarra-Martinez*, 66 F.3d at 1012). As noted in *Williams*, "[t]he policies underlying rule 404(b) are inapplicable when offenses committed as part of a 'single criminal episode' become other acts simply because the defendant 'is indicted for less than all of his actions.'" *Williams*, 989 F.2d at 1070 (quoting *United States v. Soliman*, 813 F.2d 277, 278 (9th Cir. 1987)).

Here, while Brown was indicted for less than all of his actions, the prior thefts, which had the same *modus operandi* as the charged offenses, were all part of a long single criminal course of conduct. If the Government had charged the "unit of prosecution" as a scheme to defraud the union which began in January 2010 and lasted until April 21, 2014, there is no question that the evidence of the acts committed from January 2010 to April 2014 would be direct evidence of the crimes charged. The fact that the Government is proceeding on two false entries in two vouchers, and the payment and receipt of the checks relating to those two false entries, does not mean that the evidence of the fraudulent scheme which occurred prior to that criminal conduct is irrelevant to the case. It was all part of the same *modus operandi* and the first exception to Fed. R. 404(b) applies here.

4

Moreover, the Government has a right to present a coherent and comprehensible story regarding the commission of the crime.  Brown was employed in the same job -- as Secretary/Treasurer of the Hawaii Longshore Division, Local 142, ILWU -- during the entire time period in which the embezzlements occurred.  In other words, Brown did not suddenly decide in April 2014 to start stealing from the union; rather, he had been doing it for more than four years already and had gotten away with it.  The Government needs to provide a context to the charged offenses and the second exception to Rule 404(b) applies.

This is apparent by a comparison of relevant evidence of the uncharged criminal conduct with other evidence of the criminal conduct charged in Counts 1-4 of the Indictment.

Exhibit 1 is a two-page document.  The first page is page 1 of the Longshore Agreement (i.e., the union contract) between the corporate employer—McCabe, Hamilton & Renny Co., Ltd.—and the employees who members of the Longshore Division of ILWU Local 142.  That page is included herein to provide context for Page 2 of that exhibit.  Page 2 of Exhibit 1 is entitled "Exhibit 'A'" and "Wages and Special Rates."  Brown was employed as a Machine Operator, which is the first of the "Skilled Classifications."  According to the Agreement, in January 2010 (the month of the uncharged criminal conduct discussed below), Brown, and the other unionized employees who worked for McCabe, had a "basic straight time"

5

(i.e., an hourly time) of $32.37 per hour.   In addition, because Brown was employed in a "Skilled Classification" as a Machine Operator, he was entitled to an additional $1.41 per hour.  Plus, when, at various times, Brown operated a "truck-tractor in longshore container operations," he was entitled to an additional $0.22 per hour.  Exhibit 1.

Now, the Government turns to the evidence of an uncharged alleged theft which Brown allegedly committed during the week involving Sunday, January 24, 2010.  The Government seeks the admissibility of this evidence as being inextricably intertwined with the charged offenses.

That is, Exhibit 2 is the earnings information for Brown, provided by McCabe, for the week prior to January 28, 2010.  It reflects that on January 24, 2010, Brown worked 9 hours of straight time (ST) and therefore was entitled to 9 hours multiplied by $33.78 per hour (apparently he did not operate a "truck-tractor in longshore container operations" and, consequently, did not receive the additional $0.22 per hour he would have received had he worked in that capacity) for a gross total of $304.02.  This information is reflected in the highlighted line near the top of exhibit 2.  The bottom of Exhibit 1 is the check prepared by McCabe and made payable to Brown, which includes the $308.02, minus deductions such as taxes, dues, medicare, etc., plus payment for two other work days.  The net pay for the three work days was $384.69.

Exhibit 2 now needs to be compared to Exhibit 3.  This is a document entitled "Wage Voucher" which allegedly was prepared and signed by Brown, which informed the Longshore Division that he *could* have worked 15 hours on the dock for McCabe *but did not do so because he was conducting his union duties*. Under the contract that McCabe has with the union, the union was required to pay Brown for the "lost time wages" that Brown could have earned had he been at the docks that day working for McCabe instead conducting his union business at the union office or elsewhere.

According to Exhibit 3—the "Wage Voucher" submitted by Brown—he informed the union that he could have worked 15 hours for McCabe on January 24, 2010, and that he would have been paid $34 per hour for that employment.[3]  Based upon that "Wage Voucher," the union paid Brown a gross total of $510, which is reflected as part of a check Brown received from the union in the amount of $2,117.38, because he—according to Brown, was entitled to payment for a remarkable *97 hours* that he claimed he could have worked for McCabe but did not do so because he had to conduct his union business instead.

Exhibit 4 is the check and paystub for Brown, covering the time period of January 23-27, 2010, including the day in question—January 24, 2010.  It reflects

---

3  In actuality, as stated above, McCabe paid Brown on that date at an hourly rate of $33.78, so even the hourly rate was exaggerated by Brown.

that the union paid Brown the amount of $2,117.30.

The two payments—the McCabe one for $384.69 (see Exhibit 2) and the union one for $2,117.38 (see Exhibit 4)—were both deposited in a bank account that Brown shares with his wife.

In sum, the evidence of the prior bad acts is not covered by Fed. R. Evid. 404(b) and this Court need not consider its applicability. *See, e.g., United States v. DeGeorge*, 380 F.3d 1203, 1220 (9th Cir. 2004) ("Because we conclude that the evidence of prior losses is 'inextricably intertwined' with the charges in the indictment, we need not consider its admissibility under Rule 404(b)."). Nonetheless, the evidence also is admissible under Rule 404(b).

"Rule 404(b)(1) prohibits using evidence of crimes, wrongs, or other acts 'to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.'" *United States v. Wells*, 879 F.3d at 928 (quoting Fed. R. Evid. 404(b)(1)). "Such evidence may be admissible for other purposes, 'such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.'" *Id.* (quoting Fed. R. Evid. 404(b)(2)). "Thus, 'Rule 404(b) is a rule of inclusion -- not exclusion -- which references at least three categories of other 'acts' encompassing the inner workings of the mind: motive, intent, and knowledge.'" *Id.* (quoting *United States v. Curtin*, 489 F.3d 935, 944 (9th Cir. 2007) (en banc).

The Government believes that the primary issue at trial will be Brown's intent, that is, did he knowingly and intentionally make false entries on his Wage Vouchers in an effort to steal money from the union and, relatedly, did he steal the money once he was paid for those hours by the union.  The best evidence of Brown's intent will come from his course of conduct the prior four years, that is, he made false entries and related thefts on union vouchers on a regular basis in order to steal money from the union.  That evidence is admissible under Fed. R. Evid. 404(b) to show the defendant's intent, knowledge, and absence of mistake.

**Conclusion**

Under both prongs of the "inextricably intertwined" theory relating to the admissibility of uncharged bad acts, the evidence of the prior false entries, and the related thefts of union funds, is admissible.  Alternatively, the evidence is admissible pursuant to Fed. R. Crim. P. 404(b) to prove the defendant's intent, knowledge, and absence of mistake.

DATED:  March 9, 2022, at Honolulu, Hawaii.

Respectfully submitted,

CLARE E. CONNORS
United States Attorney
District of Hawaii

By:  */s/ Marshall H. Silverberg*
　　　MARSHALL H. SILVERBERG
　　　Assistant U.S. Attorney

9

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that the foregoing document was served on the following

counsel on the date and in the manner described below:

<u>Served Electronically through CM/ECF:</u>

WILLIAM HARRISON          WHARRISON@HAMLAW.NET
Attorney for Defendant
Charles Kimo Brown

DATED:  March 9, 2022, at Honolulu, Hawaii.


<u>/s/Shaunte Pompey</u>
Legal Assistant
U.S. Attorney's Office