CLARE E. CONNORS #7936
United States Attorney
District of Hawaii

MARSHALL H. SILVERBERG #5111
Assistant U.S. Attorney
Room 6100, PJKK Federal Building
300 Ala Moana Blvd.
Honolulu, Hawaii   96850
Telephone:  (808) 541-2850
Facsimile:  (808) 541-2958
Email:   Marshall.Silverberg@usdoj.gov

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| UNITED STATES OF AMERICA, | ) CR. NO. 19-00046 LEK |
|---|---|
| Plaintiff, | ) |
| | ) The Government's Sentencing |
| | ) Memoranda; Certificate of Service |
| vs. | ) |
| | ) **SENTENCING DATE:** |
| CHARLES KIMO BROWN, | ) DATE:   April 12, 2023 |
| | ) TIME:   1:30 p.m. |
| Defendant. | ) JUDGE: Hon. Leslie E. Kobayashi |
| | ) |

**THE GOVERNMENT'S SENTENCING MEMORANDUM**

Pursuant to CrimLR32.2(e), the Government hereby submits its Sentencing Memorandum.

I. **Response to the Defendant's challenge to PSR ¶¶ 27, 35, 36, 41, 44, 75, and 84**

In his Sentencing Statement (filed on Feb. 06, 2023), the defendant argued that Paragraph 27, which summarized the defendant's fraud which was committed outside the statute of limitations, should be eliminated. The Probation Office, in its Final Presentence Report, rejected that argument pursuant to *United States v. Williams*, 217 F.3d 751, 754 (9th Cir. 2000) (Relevant conduct may include conduct that would normally be barred from prosecution by the statute of limitations.). The Government agrees with the Probation Office's rejection of the defendant's challenge to Paragraph 27 and the related calculations.

The Government writes separately here to emphasize that there is a more recent Ninth Circuit case than *Williams* -- one that also supports the inclusion of relevant conduct committed outside the period covered by the statute of limitations. *See United States v. Anieze-Smith*, 923 F.3d 565, 575 (9th Cir. 2019) ("We have held that district courts may consider time-barred conduct for purposes of enhancing a defendant's sentence.") (citing *Williams*)). Accordingly, as the Probation Office found in the Final Presentence Report, the defendant's challenge to paragraphs 27, 35, 36, 41, 44, 75, and 84 should be denied.

2

## II. The downward variance recommended by the Probation Office

While the Government agrees with the Probation Office's resolution to the challenge to Paragraph 27, and the related calculations in the other paragraphs, the Government respectfully disagrees with the Probation Office's conclusion that a downward variance is warranted. That is, if the defendant had not testified at all during his trial, or testified only a "little bit" falsely, the Government likely would not be disagreeing with the Probation Office's recommendation.

However, where, as here, a defendant lies so extensively during his trial testimony, such that he has committed multiple acts of perjury chargeable under 18 U.S.C. § 1621, then some courts have held that an *upward* variance may be warranted. *See, e.g. United States v. Feldman*, 931 F.3d 1245, 1264 (11th Cir. 2019) ("Findings that a defendant lacks remorse and committed perjury to escape conviction are a valid basis for an upward variance.") (affirming upward variance of sentence from a sentencing range of 46-57 months to a sentence of 100 months because, in part, of the defendant's perjury and lack of remorse)). Here, because the defendant, as discussed below, committed at least six different acts of perjury when testifying – both on direct examination and during his cross-examination – the Government could ask for an *upward* variance in contrast to the recommended downward variance. Nonetheless, the Government is not making that request.

3

An upward variance is not necessary because the extent of the defendant's perjurious testimony can and should be considered in applying the section 3553(a) factors. As stated in *Feldman*:

> Feldman argues that a district court must find "extraordinary circumstances" before varying upward based on perjury from a guideline range that already incorporates an obstruction-of-justice enhancement, but no such requirement exists. **On the contrary, a defendant's perjury at trial speaks directly to important sentencing factors—including the "characteristics of the defendant," "respect for the law," and the ability of the criminal-justice system "to afford adequate deterrence to criminal conduct,"** 18 U.S.C. § 3553(a)(1), (a)(2)(A)-(B)—"and it is within [the district] court's discretion to decide how much weight to give each of the § 3553 factors."

*Id.* at 1264-65 (emphasis added).

Here, the defendant committed perjury during at least *six* portions of his trial testimony, both on direct examination and during cross-examination. More specifically, the defendant lied as follows:

(a) The defendant lied when he testified he had worked on the two Sundays before the time periods set forth on the two vouchers, that is, on Sunday, April 6, 2014, and Sunday, April 13, 2014 (See Trial Exhibits 12 and 13, Dkt. Nos. 58-2 and 58-3). The Court already has found that "Brown's testimony as to this issue is not credible." Decision, Dkt. 83 at 16.

(b) The defendant lied when he testified that the Collective Bargaining Agreement (CBA) that the union had with the employer, McCabe, allowed him to claim rest time on Sundays if he was scheduled to work the following day. The Court already has found that Brown's testimony on this is not credible because the CBA requires "the completion of work before entitlement to a rest period, not merely being scheduled to work." Decision, Dkt. 83, at 17.

4

(c) The defendant then claimed that even if the practice was not consistent with the CBA, it was a common practice passed down verbally to union officers by former officers. The Court already has found "that this testimony is not credible, in part because Brown offered three different explanations for his addition of his April 6, 2014 rest time to his April 7, 2014 union leave hours." Decision, Dkt. 83 at 18.

(d) The defendant lied about why he was entitled to claim an additional 4.5 hours for lost time on April 14, 2014, and the Court already has found that his testimony on that issue was not credible. Decision, Dkt. 83 at 19.

(e) The defendant lied when he testified that he never used separate lines for Sunday rest time. While the defendant claimed his testimony on this issue was "inaccurate," and the Court has so found, Decision, Dkt. 83 at 20, the Government submits that he lied on this issue, just like he lied regarding the issues discussed above.

(f) The defendant lied when he testified that he was entitled to claim 10 hours of overtime pay for union leave on April 15, 2014, when in truth, no one in his "gang" worked on that day, meaning he was not entitled to *any* compensation for that day either. While the defendant claimed the discrepancy was due to error made by the McCabe dispatcher, the Court found "that Brown's claim of dispatcher error [was] not credible because Brown made the same type of overstatement numerous times from October 2010 to April 2014." Decision, Dkt. at 21.

(g) The Court also found that other aspects of the defendant's trial testimony was not credible. Decision, Dkt. at 25, 26.

In sum, this is not a case where a defendant committed a crime, pleaded guilty, or merely put the Government to its burden of proof at trial. Rather, this is a case where the defendant repeatedly lied during his trial testimony. And that pattern of lying means a downward variance simply is not warranted.

Moreover, the two-level increase pursuant to U.S.S.G. § 3C1.1 (see PSR ¶ 40), by itself, does not adequately punish the defendant for his extent of his perjury.   If the defendant had lied only once, or even perhaps only twice, then the two-level adjustment under U.S.S.G. § 3C1.1 (see PSR ¶ 40) might sufficiently punish him for that conduct.   But the defendant's false testimony at trial went way beyond that.   Indeed, one could practice in this Court for more than 40 years and not witness a defendant who kept lying so extensively after being confronted with contrary evidence.   It is only because the Government's counsel had the assistance of two very competent case agents, who knew the vouchers, the McCabe logbook, and the McCabe pay slips in unusual detail, that the Government's counsel was able to confront the defendant as he lied by changing his trial testimony to try and adapt to new conflicting evidence.   In sum, the unusual extent of the defendant's perjurious testimony overrides and supersedes the mitigating evidence cited in the Presentence Report.   No downward variance is warranted here.

Accordingly, the Government requests a sentence in the middle of the Guideline range, that is, **<u>30 months.</u>**   Such a sentence would not only punish the defendant for his criminal conduct in stealing more than $95,000 from his fellow union members, it also would punish him, pursuant to 18 U.S.C. 3553(a), for the extent of his perjurious trial testimony.

### III. The fine

The Probation Office recommends a fine of $100,000, noting that that amount is nearly the amount of money that the defendant stole from his fellow union members. PSR at page 30. The Probation Office further notes that the defendant owns three residences, has a positive net worth of nearly $900,000, and a positive monthly cash flow of approximately $4,000. *Id.*

The Government agrees with the Probation Office's calculations with respect to the defendant's net worth and his ability to pay a fine. But the Government respectfully requests that the fine be **$150,000** and not $100,000. Merely divesting the defendant of approximately the same amount of money that he stole from his fellow union members is inadequate to promote deterrence for future crimes, especially from union leaders. A message needs to be sent not only to the defendant but also to other union leaders that if you steal from your union members, you don't simply face a term of imprisonment and the return of the money you stole. Rather, the message should be that such a thief would not only face a term of imprisonment but also would have to pay a 50 percent penalty for all of the money that he stole from his fellow union members. There is no question that this defendant can afford a fine of $150,000 and that money would then go to the Crime Victims Fund to benefit victims of crimes.

## IV. The Forfeiture Money Judgment

The Presentence Report notes on page 29 that no order regarding forfeiture has been filed. The reason for that is that the defendant, through his counsel, has agreed to sign a Forfeiture Money Judgment in the courtroom before he is sentenced. The Government will bring that Judgment (with the amount calculated by the Probation Office: $1,425.01) with it to the Sentencing Hearing and present it to the defendant and his counsel for their signatures. The Government will then present the signed Judgment to the Court for the Court's review, signature, and filing.

## V. Conclusion

For the foregoing reasons, the Government respectfully requests that the Court impose a term of imprisonment of **30 months** and a fine of **$150,000.**

Dated:   April 3, 2023, at Honolulu, Hawaii.

                                    Respectfully submitted,

                                    CLARE E. CONNORS
                                    United States Attorney
                                    District of Hawaii

                        By:   /s/ *Marshall H. Silverberg*
                                Marshall H. Silverberg
                                Assistant U.S. Attorney

                                *Nicole Hudspeth*
                                Special Assistant U.S. Attorney

CERTIFICATE OF SERVICE

I hereby certify that, on the date and by the method of service noted below, a true and correct copy of the foregoing was served on the following by email:

William A. Harrison, Esq.
wharrison@hamlaw.net

Attorney for Defendant
Charles Kimo Brown

Darsie Ing-Dodson, United States Probation Officer
Darsie_ing_dodson@hip.uscourts.gov

DATED:   April 3, 2023, at Honolulu, Hawaii.

*Rowena Kang*
U.S. Attorney's Office
District of Hawaii